UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARK A. DAVIS,

                              *Plaintiff*,

        --against--                                    **VERIFIED COMPLAINT
                                                       AND JURY DEMAND**

                                                       Civil No. _____

NATIONAL GRID USA SERVICE COMPANY, INC.,
and ANDREA PUSTULKA, *in her individual capacity*,

                              *Defendant*s.
-----------------------------------------------------------------X


        Plaintiff, MARK A. DAVIS, by and through his attorneys, the LAW OFFICE OF LINDY

KORN, PLLC, hereby complains of the Defendants, NATIONAL GRID USA SERVICE

COMPANY, INC., and ANDREA PUSTULKA, in her individual capacity, *upon information and

belief*, as follows:


                              **NATURE OF THE CLAIMS**

        Mr. Davis seeks the appropriate remedies and damages for illegal discriminatory treatment

based on hostile work environment because of race and retaliation for opposing discrimination in

violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. 2000e et. seq) and

§1981 because of race discrimination and retaliation for opposing discrimination.  Defendants

racially harassed Mr. Davis, denied him a promotion, gave him different / worse job duties than

white employees, among other things, as alleged below.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based upon Mr. Davis's residency within the Western District of New York, Defendants maintain offices and/or residences within the Western District of New York, and a substantial part of the acts or omissions giving rise to Mr. Davis's claims occurred within the Western District of New York.

## THE PARTIES

3. At all relevant times, Plaintiff MARK A. DAVIS ("Plaintiff" or "Mr. Davis") is a resident of the State of New York, Erie County.

4. At all relevant times, Defendant NATIONAL GRID USA SERVICE COMPANY, INC., ("NATIONAL GRID") is an active domestic business corporation and maintains a company location at 144 Kensington Avenue, Buffalo, New York 14214.

5. At all relevant times, Defendant NATIONAL GRID has more than fifteen (15) employees.

6. At all relevant times, Defendant ANDREA PUSTULKA ("Defendant PUSTULKA") is a resident of the State of New York, Cattaraugus County.

7. At all relevant times, Defendant PUSTULKA had supervisory authority over Mr. Davis and was Mr. Davis's direct supervisor.

8. Together, Defendant NATIONAL GRID and Defendant PUSTULKA will be referred to in this Complaint as "Defendants."

9. At all relevant times, Mr. Davis worked at 144 Kensington Avenue, Buffalo, New York 14214.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Mr. Davis exhausted his administrative remedies as a prerequisite to bringing his claims as follows:

11. On September 24, 2021, Mr. Davis filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  The Federal Charge Number is 525-2021-01209.

12. On September 23, 2022, the EEOC sent Mr. Davis a "Right to Sue" letter.

## FACTUAL ALLEGATIONS

13. Mr. Davis is Black, male, and engaged in protected activity when he complained of illegal workplace discrimination in or around September 2020 in the form of an internal complaint, and later filed an EEOC Charge of Discrimination on September 24, 2021 with the Buffalo, New York EEOC office.  Mr. Davis complained to National Grid about his supervisor's targeted racist conduct as early as 2012.

14. On June 19, 1989, National Grid hired Mr. Davis.  Most recently, Mr. Davis worked as a Senior Supervisor of the Customer Metering Service ("CMS") Department at National Grid's Kensington location.  Mr. Davis was responsible for managing field personnel, turning on and off electrical service for customers, trouble-shooting electrical problems, and storm restoration.  Mr. Davis also created departmental schedules, trained staff, and hired and disciplined employees.  For most of his thirty-two-year career with National Grid, Mr. Davis worked in a supervisory capacity.

15. At all times, Mr. Davis was qualified for his positions at National Grid.  Mr. Davis has an M.B.A. from Medaille College.  Mr. Davis received multiple recognitions for his supervisory skills and contributions as an employee, including statewide company awards.

16. Mr. Davis never received disciplinaries, negative performance evaluations, or performance improvement plans.

17. Mr. Davis's most recent supervisor, Andrea Pustulka ("Defendant PUSTULKA") created a racially hostile work environment for Mr. Davis by openly making racist comments at work, favoring white employees in promotion and pay raise decisions, and ignoring complaints of racism from Black employees, including Mr. Davis, among other things.  Defendant PUSTULKA is white.

18. For example, as early as 2012, Defendant PUSTULKA encouraged a white National Grid employee to accuse Mr. Davis of verbally assaulting her and physically threatening another National Grid employee.  Upon information and belief, Defendant PUSTULKA also encouraged this white employee to file an internal complaint against Mr. Davis over these false accusations. During the investigation of the complaint, Mr. Davis requested for a National Grid employee who witnessed the entire event to come forward as a witness, however, Defendant PUSTULKA refused to let the employee, who is Black, take part in the internal investigation involving Mr. Davis. Concerned over Defendant PUSTULKA's targeting, Mr. Davis initiated an internal complaint to Defendant NATIONAL GRID about her conduct, which led to the dismissal of prior complaints against Mr. Davis.

19. However, this did not stop Defendant PUSTULKA.  At one point, Defendant PUSTULKA urged the workers' union reps to file bogus ethical reports against Mr. Davis, an esteemed supervisor at CMS.

### _When Defendant PUSTULKA repeatedly made racist comments in front of Mr. Davis._

20. Defendant PUSTULKA openly made derogatory, race-based remarks about Black employees at National Grid.  For example, Defendant PUSTULKA referred to Anokwuru McHuges, the CMS Safety Director and Mr. Davis's Black co-worker, **_as "stupid" and "clueless."_**  Defendant PUSTULKA said this in front of Mr. Davis.

21. Defendant PUSTULKA further stated that Mr. McHuges was **_"only hired because of affirmative action."_**  Defendant PUSTULKA said this in front of Mr. Davis.

22. Defendant PUSTULKA complained during a staff meeting at the Batavia location about two National Grid employees being late to give a presentation.  The employees in question were attorneys and scheduled to give a presentation at the staff meeting.  Both attorneys are Black employees.  Once the attorneys arrived at the staff meeting, Defendant PUSTULKA said: **_"that figures, Black people are always running late" and laughed._**  Defendant PUSTULKA said this in front of Mr. Davis.

23. Defendant PUSTULKA made racist comments about her own boss, Tim Graham, also a Black employee, by stating to other National Grid employees: **_"he has no clue what he's doing, he should be fired, he cheats on his wife."_**  Defendant PUSTULKA said this in front of Mr. Davis.

### _When Defendant PUSTULKA treated Mr. Davis worse than similarly situated white supervisors._

24. Defendant PUSTULKA spread vicious rumors about Mr. Davis.  Defendant PUSTULKA lied to National Grid employees by stating that Mr. Davis physically abused his ex-wife, another National Grid employee.  Multiple employees approached Mr. Davis to ask him if the rumors Defendant PUSTULKA was spreading were true.  Mr. Davis was deeply embarrassed by these false and

defamatory statements about his character, which Defendant PUSTULKA utilized to try to embarrass and discredit Mr. Davis.

25. Defendant PUSTULKA made Mr. Davis attend non-work meetings after work hours without getting paid, while two white supervisors who previously attended these meetings got paid.

26. For two years, Defendant PUSTULKA made Mr. Davis report to different work locations in both Fredonia, New York and Orlean, New York at the start of his shift and to stay there until the end of his shift, instead of reporting to the Buffalo office, his primary work location.  It is company policy that employees report to their primary work location at the start of the shift, then drive to the secondary location on company time and return to the primary location at the end of the shift, also on company time.

27. Defendant PUSTULKA went against the National Grid policy because she did not want Mr. Davis in the Buffalo office because she had to report there.  Defendant PUSTULKA not only broke company policy, but she had Mr. Davis working far away from his primary office to get him to quit his job.

28. In the meantime, Defendant PUSTULKA favored a white co-worker, Carl Pawlak, that she was trying to bring into the CMS Department to replace Mr. Davis.  Mr. Pawlak also lived near Defendant PUSTULKA near Fredonia.  Ultimately, this arrangement with Mr. Pawlak did not work out and Defendant PUSTULKA hired another employee from Fredonia, Brian Seibert.  Mr. Seibert lived in Fredonia and wanted to work in Fredonia, so she decided to give Mr. Seibert the position permanently, and ultimately brought Mr. Davis back to the Buffalo location to help Mr. Seibert.  Both Mr. Pawlak and Mr. Seibert are white.

29. On more than one occasion Defendant PUSTULKA swore at Mr. Davis. Once, Defendant PUSTULKA swore at Mr. Davis because he refused to answer a question untruthfully to her boss, Mr. Graham.

### *When Defendant PUSTULKA ignored Black employee workplace concerns, including Mr. Davis's.*

30. Defendant PUSTULKA ignored Mr. Davis when he brought concerns to her attention about his job or work projects. Defendant PUSTULKA would repeatedly say to Mr. Davis, "don't talk negatively" when Mr. Davis was simply trying to do his job.

31. Defendant PUSTULKA failed to respond to workplace concerns of other Black employees. Once, a white supervisor returned as an employee to Mr. Davis's department, CMS. Defendant PUSTULKA told Mr. Davis that some of the Black service representatives believed that the returning white supervisor was racist. Instead of addressing the employees' workplace concerns, Defendant PUSTULKA forced Mr. Davis to manage the Black service representatives' concerns rather than coaching the white supervisor regarding the Black employees' complaints and ignoring them.

32. Concerned about the racially hostile work environment created by Defendant PUSTULKA, in September 2020 Mr. Davis filed an internal complaint of employment discrimination with Defendant NATIONAL GRID. Mr. Davis also complained to Human Resources Manager Michael Rubino in January 2021. Mr. Rubino stated to Mr. Davis that in his investigation the charges were unfounded. Upon information and belief, Defendant NATIONAL GRID failed to investigate Mr. Davis's complaint or take any action to stop Defendant PUSTULKA's illegal workplace racism, despite his repeated efforts.

**_When Defendant PUSTULKA interfered with Mr. Davis receiving a promotion at work._**

33. A few months later in March 2021, Mr. Davis, a long-time, successful employee of National Grid with decades of supervisory experience, applied for a management position that he was both qualified for and desired. The position was titled Manager, Field Operations. Mr. Davis interviewed well and anticipated receiving this well-earned and well-deserved promotion, as he was the most qualified candidate.

34. Defendant PUSTULKA participated as one of the interviewers and, presumably, as one of the decision-makers for this open position.

35. On March 10, 2021, Defendant NATIONAL GRID awarded the managerial position to a far less experienced and less senior employee, Jason DeJoe. Mr. DeJoe is white.

36. Mr. Davis previously mentored and trained Mr. DeJoe.

37. Further, Defendant NATIONAL GRID ignored the fact that Mr. DeJoe exhibited workplace racism by openly posting an image of an anti-Black, racist symbol on his work desk – the Confederate flag. Mr. DeJoe also had Civil War re-enactment photos posted at his desk in the open office area for employees at National Grid.

*(balance of this page intentionally left blank)*

38. Here is a photo of the two images posted in Mr. DeJoe's office space at National Grid:



39. At the time Mr. DeJoe posted the image of a Confederate Flag at his desk, he was a National Grid supervisor and managed Black and Brown employees.

40. It was during this time that Mr. Davis, a Black employee, was forced to mentor and work with Mr. DeJoe.

41. Despite this disturbing fact, Defendant NATIONAL GRID not only promoted Mr. DeJoe, who was less experienced and less knowledgeable than Mr. Davis, but also gave Mr. DeJoe a position of power over more employees, including Black employees.

42. Upon information and belief, Defendants deliberately posted the Manager, Field Operations position as a Fredonia manger position, not a Western Region manager position. The position was posted in this manner because it was near where the prevailing candidate lived and to eliminate statewide competition, as the location of the posting lead any prospective applicants to believe that the position was in Fredonia, New York, when in fact the candidate could live anywhere in National Grid's Western Region.

43. Further, Defendant PUSTULKA sent an email to the National Grid supervisors in the Western Division, but not the entire company, about the Manager, Field Operations position. Defendant PUSTULKA purposely limited the possible number of interested applicants by not posting the position widely within the company. Defendant PUSTULKA's actions benefited her preferred, white candidate, Jason DeJoe.

44. The Manager, Field Operations position should have been posted company-wide, as was the usual practice for such job postings.

45. This was not the first time that Defendant PUSTULKA appointed Jason DeJoe to a higher management position. In 2017, Defendant PUSTULKA appointed Jason DeJoe to the interim lead supervisor position, which eventually became a permanent position. Despite only being in the department for two years, Mr. DeJoe was appointed over a more qualified Mr. Davis who had over twenty (20) years in the department at the time. Further, Defendant PUSTULKA assigned the interim manager position to Mr. DeJoe and then took over one year to post the actual, permanent

position, allowing Mr. DeJoe time to gain experience as the interim manager, which Defendant PUSTULKA used as the primary reason for hiring Mr. DeJoe over Mr. Davis.

46. Both of Mr. Davis's counterparts in Syracuse and Albany received promotions to lead supervisor (manager) positions, but Defendant PUSTULKA denied it to Mr. Davis.  Mr. Davis's counterparts are white employees.  When the manager position in the Eastern Division in the CMS department opened, the position was given to a white supervisor without going through the typical National Grid job posting process.  Mr. Davis had to fight just to get an interview.

### *When Mr. DeJoe retaliated against Mr. Davis's son, a National Grid employee.*

47. Defendant National Grid also retaliated against Mr. Davis by attempting to discipline his son, who is also a National Grid employee.

48. For example, in or around May 2019, Mr. DeJoe followed Mr. Davis's son at the end of his shift to his home.  At the time, Mr. Davis's son was a Service Representative who lived and worked in Fredonia, New York.  Mr. DeJoe was harassing Mr. Davis's son about being outside of his work area despite his workday being over.

49. For example, in December 2019, Mr. DeJoe, in his capacity as interim manager, made a supervisory write-up for Mr. Davis's son for answering a "call-out."  At the time, Mr. Davis's son was now a Buffalo Service Representative who was assigned to work one day in the Southwest Region (Fredonia and Jamestown).  Mr. Davis's son had just transferred to the National Grid's Buffalo Service territory because of the harassment from Mr. DeJoe.  There was an emergency call, and the dispatcher could not get anyone to cover it, so the dispatcher contacted Mr. Davis's son to see if he could take the call since he was working that area for the day.  Mr. Davis's son

took the emergency call, as requested by the National Grid dispatcher.  Mr. DeJoe made Wanda Fournier, the supervisor in the Southwest Region, write him up for doing this work.

50. Mr. Davis's son met with his union and the company concerning Mr. DeJoe's conduct.  Both matters were dismissed, and Mr. DeJoe was warned by the union to stop harassing Mr. Davis's son to get back at Mr. Davis.

51. Mr. Davis complained to Mr. DeJoe and to his union that Black Representatives, such as his son, were getting more write-ups than white employees, especially from the Southwest Region.

### *When Defendant trashed Mr. Davis's belongings in his office.*

52. Since filing his EEOC complaint, Mr. Davis went out on short-term disability as of April 19, 2021, and currently is out on a long-term disability claim as of November 21, 2021.  Mr. Davis is still a National Grid employee.

53. Defendants at no time reached out to Mr. Davis to give him a chance to pack and collect his personal belongings given his absence.

54. On January 31, 2022, Mr. Davis received phone calls from multiple National Grid employees that worked for him stating that Mr. DeJoe was cleaning out his desk and a labor representative from Defendant's Human Resources, Kathy Covatta, was watching him.  Mr. Davis's employees told him that his office had been ransacked and his personal belongings were stuffed into trash bags.

55. Alarmed, as he had no notice of this, Mr. Davis called Ms. Covatta several times to find out what was happening, though she never answered the phone.

56. A few days later, Mr. Davis called another supervisor within the department, Brad Landberry, to let him know that he was coming in to get his personal things out of his desk.  Mr. Landberry told

Mr. Davis that had to go through Mr. DeJoe.  After multiple attempts, Mr. Davis finally reached Mr. DeJoe, and they decided for Mr. Davis to come in on Tuesday, February 15, 2022.

57. On February 15, 2022, Mr. Davis arrived at his office to retrieve his personal belongings.  Mr. Davis could not believe what he saw.  His office was a mess and things were thrown all over the place.  While some personal items remained on Mr. Davis's desk, other belongings of his were in trash bags.

*(balance of this page intentionally left blank)*

58. Here  is  a  photo  of  Mr.  Davis's  personal  belongings  in  multiple  trash  bags:



59. The trash bags also had actual garbage in them, including chicken wing bones.

60. Here is a photo of the chicken wing bones and other garbage co-mingled with Mr. Davis's personal

belongings:



61. Initially, Mr. DeJoe tried to prevent Mr. Davis from accessing his own belongings.  Mr. Davis arrived at the office and noticed three boxes in the hallway.  Mr. DeJoe told Mr. Davis that the boxes contained his personal items.  Mr. Davis told Mr. DeJoe that his employees reported to him that Mr. DeJoe had put some of his belongings in trash bags in the conference room, and that Mr. Davis wanted to go through the trash bags.

62. Mr. Davis also told Mr. DeJoe that he wanted to go through his desk.  Mr. Davis noticed that it appeared that Mr. DeJoe had been looking for something.  His desk had been ransacked, not cleaned out.  Mr. Davis noticed that some of his folders were missing.  Mr. Davis could not believe the way his office, desk, and personal belongings were handled after thirty-two (32) years with National Grid.

63. Mr. DeJoe claimed that he could not get in touch with Mr. Davis because he lost his cell phone number.  This made no sense as Mr. Davis's son and ex-wife worked in the same department and this information was also easy to get from other employees and presumably Defendant's human resources employees.

64. Mr. Davis witnessed white supervisors who were terminated for cause from employment be treated better by Defendant National Grid than he was.

65. Before Defendants' illegal actions, Mr. Davis was a loyal, hard-working, proud, and happy employee who always went above and beyond his job duties on behalf of Defendant National Grid.

66. As a result of Defendants' actions, Mr. Davis experienced humiliation, embarrassment, anger, and emotional distress.

67. As a result of Defendants' actions, Mr. Davis currently treats with a therapist.

**FIRST CAUSE OF ACTION:**
**Race Discrimination in violation of § 1981 against National Grid and Andrea Pustulka**

68. Mr. Davis repeats each allegation set forth herein in the preceding paragraphs as though fully set forth herein.

69. Defendants' actions were willful and not done in good faith.

70. As a result of Defendants' conduct, Mr. Davis suffered great emotional harm.

71. Mr. Davis is therefore entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

**SECOND CAUSE OF ACTION:**
**Retaliation in violation of § 1981 against National Grid and Andrea Pustulka**

72. Mr. Davis repeats each allegation set forth herein in the preceding paragraphs as though fully set forth herein.

73. Defendants' actions were willful and not done in good faith.

74. As a result of Defendants' conduct, Mr. Davis suffered great emotional harm.

75. Mr. Davis is therefore entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION:**
**Race Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, against National Grid**

76. Mr. Davis repeats each allegation set forth herein in the preceding paragraphs as though fully set forth herein.

77. Defendant's actions were willful and not done in good faith.

78. As a result of Defendant's conduct, Mr. Davis suffered great emotional harm.

79. Mr. Davis is therefore entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION:
### Retaliation for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, against National Grid

80. Mr. Davis repeats each allegation set forth herein in the preceding paragraphs as though fully set forth herein.

81. Defendant's actions were willful and not done in good faith.

82. As a result of Defendant's conduct, Mr. Davis suffered great emotional harm.

83. Mr. Davis is therefore entitled to relief including but not limited to liquidated damages on equitable and injunctive relief, an award of compensatory damages, expenses, and attorneys' fees and costs in an amount to be determined at trial.

## INJURY AND DAMAGES

84. As a result of the acts and conduct complained herein, Mr. Davis suffered the loss of a job promotion.  Mr. Davis has also suffered emotional pain, suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses.  Mr. Davis has further experienced significant emotional distress from the racially hostile work environment and retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Davis respectfully requests a judgment against the Defendants:

a.  Declaring that the Defendant NATIONAL GRID engaged in unlawful employment practice prohibited by Title VII of the Civil Rights Act of 1964, as amended, and declaring that both Defendants engaged in unlawful employment practice prohibited by § 1981;

b.  Awarding Mr. Davis any economic damages and compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

c.  Awarding Mr. Davis punitive damages;

d.  Awarding Mr. Davis attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

e.  Awarding Mr. Davis such other and further relief that this Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

WHEREFORE, Mr. Davis demands judgment against Defendants in an amount to be determined at trial plus interest, punitive damages, attorneys' fees, costs, and disbursement of action, and for other such relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) Fed. R. Civ. P., Mr. Davis hereby demands a trial by jury for all issues triable of right by a jury in this case.

Dated: December 15, 2022
        Buffalo, New York

                                            Respectfully Submitted,
Plaintiff Mark A. Davis
By His Attorneys,

LAW OFFICE OF LINDY KORN, PLLC

*/s/ Lindy Korn*
LINDY KORN, ESQ.
*Attorney for the Plaintiff*
Electric Tower, Ninth Floor
535 Washington Street
Buffalo, New York 14203
(716) 856-5676
(716) 507-8475 (facsimile)
*lkorn@lkorn-law.com*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARK A. DAVIS,

                            *Plaintiff*,

        --against--                                    **VERIFICATION**

NATIONAL GRID USA SERVICE COMPANY, INC.,
and ANDREA PUSTULKA, *in her individual capacity*,

                            *Defendants*.
------------------------------------------------------------------X


        Plaintiff, MARK A. DAVIS, under penalty of perjury, deposes and says:

        I have read the attached Complaint captioned in this matter and find it to be true to my personal knowledge, except as to matters alleged upon information and belief, which I believe to be true.


                                            _____
                                            MARK A. DAVIS


Sworn before me on this *15ᵗʰ* day of December, 2022.

_____
Notary Public